IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAI YANG LEE<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant.<br>_____ / | Case No. 09-cv-00962-JLT<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING THE ENTRY OF JUDGMENT FOR DEFENDANT J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY |

## BACKGROUND

Mai Yang Lee ("Plaintiff") seeks judicial review of an administrative decision denying her claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for SSI benefits for the first time on September 28, 1998. AR at 273. The administrative law judge ("ALJ") denied the application for benefits on January 20, 2000. Id. The Appeals Council denied Plaintiff's request for review on November 3, 2000. Id. at 323. Plaintiff filed for SSI benefits again on February 24, 2000; her application was denied by an ALJ on

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  March 26, 2002.  Id. at 291.  Though Plaintiff requested review, the Appeals Council denied her
2  request on September 23, 2002.  Id. at 325-26.  Therefore, this became the decision of the
3  Commissioner.
4       The present matter arises under Plaintiff's third and fourth applications for SSI benefits,
5  dated June 13, 2002, and December 20, 2004, respectively.  AR at 364-67; Id. at 263-67.  The ALJ
6  denied the third application on November 15, 2004.  Id. at 312-16.  However, upon Plaintiff's
7  request for review, the Appeals Council vacated the decision and remanded the case for a new
8  hearing.  Id. at 318-20.  The Appeals Council rendered the claim of 2004 a duplicate, consolidating
9  the actions.  Id. at 320.  A new hearing was held on January 17, 2008.  Id. at 1289-1315.  The ALJ
10 issued a decision denying benefits on February 28, 2008.  Id. at 20-30.
11      The ALJ found the presumption of continuing non-disability was inapplicable, but the
12 doctrine of res judicata applied to the period prior to January 20, 2000.  AR at 23.  The ALJ
13 concluded that Plaintiff was not disabled within the meaning of the Act since the application date of
14 June 13, 2002.  Id. at 30.  The Appeals Council denied Plaintiff's request for review on April 16,
15 2009.  Id. at 16-18.  Therefore, the ALJ's decision became the decision of the Commissioner.
16     Hearing Testimony
17      With the assistance of a Hmong interpreter, Plaintiff testified at the hearing before the ALJ
18 on January 17, 2008.  AR at 1291.  Plaintiff said she was born on November 11, 1963.  Id.
19 According to Plaintiff, she had neither formal education nor training, was unable to read or write in
20 any language, and unable to speak or understand English.  Id. at 1291-92.  Plaintiff testified that she
21 had never worked.  Id. at 1296.
22      Although the Plaintiff testified about her medical condition, her symptoms and her
23 compliance with her treatment, the ALJ found Plaintiff's symptom testimony to lack credibility.  Id.
24 at 27.  Plaintiff does not challenge the ALJ's finding regarding her credibility.
25      Medical records demonstrated that Plaintiff was not fully compliant with treatment though
26 she testified that she was.  Also, Plaintiff exaggerated her symptoms significantly.  For example, she
27 said that she could concentrate for 15 minutes and sit for five to ten minutes only, though she sat
28 attentively throughout the 50-minute hearing.  Id. at 27-28.

1 At the hearing, Plaintiff testified that she has a problem with her memory. AR at 1297. In
2 addition, Plaintiff testified that she is depressed all the time and doesn't want to live anymore. Id. at
3 1299; 1301. She was treated for her depression, and had a "once a week session," along with some
4 medication. Id. at 1301. Plaintiff asserted that she is "fully complaint" with her treatment and "even
5 early for appointments." Id. at 1302. Beyond the mental problems, Plaintiff testified that she has
6 problems with her back, legs, and suffers from asthma. Id. at 1301.

7 Though able to prepare simple meals once a day, Plaintiff does not clean up after herself or
8 do dishes. AR at 1298. Plaintiff testified that she cannot sweep, vacuum, mop, dust the furniture,
9 take out the trash, or do the laundry. Id. at 1299.

10 Plaintiff estimated that the longest she could stand was for 30 minutes and walk 15 to 20
11 minutes. AR at 1302. She stated she was unable to sit for more than 5-10 minutes without having to
12 move or reposition herself. Id. at 1303. Plaintiff estimated that she could lift about 20 pounds. Id.
13 Additionally, Plaintiff stated that she would "lay down about once a day" for "about one hour each
14 time," though the time she did so varied from day-to-day. Id.

15 Vocational expert ("VE"), Thomas Dachelet, testified. The VE stated that Plaintiff had no
16 work history to review. AR at 1305. Therefore, the ALJ posed six hypothetical situations to the VE
17 regarding in which the VE was to assume "the persons are the same age, education, language, and
18 experience, background as claimant." Id. at 1306; see also id. at 1306-1312.

19 In the first hypothetical, the ALJ based the individual on information found in a capacity
20 assessment form (by an unknown DDS doctor) and the recommended RFC from a consultative
21 medical examiner, Dr. Rustom Damania, in August 2007. See AR at 1306; see also id. at 855, 865.
22 He described a person who could lift and carry 20 pounds occasionally and 10 pounds frequently,
23 and who needed to avoid concentrated exposure to dust, fumes, gases and odors. Id. at 1306. The
24 VE responded that this individual would be capable of all sedentary, light, and unskilled work if
25 there was no language barrier, but with the language barrier "only ten percent of the numbers would
26 remain." Id. at 1306-07. In giving examples, the VE opined that the individual could work in "light,
27 unskilled" positions as a bagger, garment sorter, or egg and produce sorter. Id. at 1307-08.

28 Next, the ALJ hypothesized a worker of Plaintiff's background who was moderately limited

in the ability to understand, remember, and carry out detailed instructions. AR at 1309. This was based on capacity assessments from 2002, by Dr. Glenn Ikawa, and 2006, by Dr. Archimedes Garcia. See id.; see also id. at 460-61, 847-48. The VE confirmed that such an individual would be able to perform all the jobs available in unskilled work, subject to the reduction in the numbers of positions available due to language differences. Id. at 1309. Thus, the VE reported that this individual could work at the same jobs identified in hypothetical number one. Id.

In the third hypothetical, the ALJ described a worker who was mildly limited in the ability to make simple, work-related decisions. AR at 1309. The ALJ added that the person was "[m]oderately limited in the ability to understand and remember complex instructions, and carry out complex instructions, [and] to make judgments on complex, work-related decisions." Id. at 1309-10. However, the worker could understand, follow, and remember one to two-step instructions, respond appropriately to usual work situations, relate adequately to others, and deal with changes in a work setting if the instructions are simple. Id. at 1310. This hypothetical was based upon the comments of Dr. Shireen Damania, a consultative psychiatrist, from August 2007. See id. at 1309; see also id. at 869-72. The VE concluded this person would also be able to work in the jobs of bagger, garment sorter, and egg or produce sorter. Id.

In hypothetical four, the ALJ described an individual who was "[s]eriously limited, but not precluded from" remembering work procedures; maintaining attention and concentration for two hour increments; keeping an ordinary routine and regular attendance, and working with others. AR at 1311. The person was unable to meet competitive standards for completing a normal workday or work week or keeping a consistent pace without a number of rest periods. Id. This hypothetical question was based upon a checklist mental impairment questionnaire completed by Dr. Luyen Luu in 2004. See id.; see also id. at 667-701. With these restrictions, the VE believed that no jobs would be available to such a person. Id. at 1311. Similarly, no jobs were available to the worker described in the fifth hypothetical, in which the worker had socialization problems also and was unable to complete tasks. Id. at 1312.

The last hypothetical, based upon Plaintiff's testimony at the hearing, was a person who could lift and carry 20 pounds, sit 5 to 10 minutes at a time, stand 30 minutes, and walk 15 to 20

4

minutes. AR at 1312. The person needed an unscheduled break, and could only concentrate in 15-minute increments. Id. Again, the VE stated no work would be available. Id.

Relevant Medical Evidence

Plaintiff received treatment from Fresno County Mental Health Services ("FCMHS") beginning February 2, 1999. See AR at 513. There, she was treated by Luyen Luu, M.D., and she participated in group therapy under the direction of Leng Mouanoutoua, Ph.D and others from FCMHS. Id.; see also Pl.'s Br. at 5. Treatment records from FCMHS include group therapy notes, "progress notes" by Dr. Luu, physician's plans of care, and periodic review forms. However, because Plaintiff attended sessions approximately once per week, a vast majority of the treatment notes are authored by group therapy leaders.

The group therapy sessions had themes for attendees to discuss topics such as pain, difficulties in relationships with children, stress, forgetfulness, and coping skills. Id. at 528, 536-37, 556-57, 588, 641-43, 778-79, and 914-930. Notes from these sessions include Plaintiff's comments relating to the topic and, occasionally, observations about Plaintiff's appearance, mood, and hygiene. See, e.g., id. at 513 ("She has adequate grooming and hygiene"); 541 ("She has adequate grooming and is animated"); and 789 ("Client was dressed [in] clean clothes and appeared normal mood").

In October 2002, state psychiatrist Dr. Glenn Ikawa reviewed the record and filled out two forms in which he indicated Plaintiff did not have any affective and anxiety related disorders. AR at 446-57. However, he opined that Plaintiff had a pain-induced mood disorder, mild depression, and post-traumatic stress disorder. Id. Also, Dr. Ikawa believed Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining social functioning. Id. at 456. On a checklist "Functional Capacity Assessment" form, Dr. Ikawa indicated Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; in all other work-related categories, Plaintiff was not significantly limited. Id. at 460-61. Dr. Ikawa stated Plaintiff was able to perform simple routine, repetitive tasks on a sustained basis. Id. at 462.

Dr. Mouanoutoua administered a comprehensive assessment evaluation of Plaintiff on April 2, 2003. AR at 656-60. In this assessment, the doctor noted that Plaintiff was focused and coherent, preoccupied in thought, and had poor short-term memory. Id. at 659. Plaintiff complained of

"depressed feeling, distress, low self-esteem, poor sleep, poor appetite, hopelessness, and some suicidal wishes [without] a plan." Id. She voiced problems with "lingering fear, irritability…and social isolation." Id. Dr. Mouanoutoua believed the problems described by Plaintiff impacted her functioning. Id. The doctor diagnosed Plaintiff with a major depressive disorder, moderate-level (delayed onset) post-traumatic stress disorder, and pain by self report. Id. at 660. Plaintiff's global assessment of functioning ("GAF") score was 50. Id.

In May 2003, Dr. Evelyn Aquino-Caro found Plaintiff had no restrictions in daily activities or difficulties in maintaining social functioning although she found that Plaintiff had mild difficulties in maintaining concentration, persistence, and pace. AR at 590. Dr. Aquino-Caro opined that Plaintiff was "able to understand, remember, and follow simple instructions." Id. at 594.

In February 2004, Dr. Luyen Luu completed a "Mental Impairment Questionnaire" regarding Plaintiff and diagnosed her with depression with a "poor" prognosis.[2] AR at 665. At the time, Plaintiff's GAF score was at 49, and her highest GAF score for the past year was 51. Id. Also, Dr. Luu noted Plaintiff is "unable to do mental calculations," which he attributed to a lack of education in her native country of Laos. Id. Dr. Luu did not complete the portion of the questionnaire where the patient's "signs and symptoms" could be checked off. See id. at 666. On the checklist form, Dr. Luu opined that Plaintiff was seriously limited, but not precluded, from the following: remembering work-like procedures, maintaining attention for two-hour segments, maintaining regular attendance and being punctual within customary tolerances, sustaining an ordinary routine without special supervision, working in coordination with others, accepting instructions, getting along with co-workers or peers, responding appropriately to instructions and changes in work settings, and being aware of hazards. Id. at 667-68. The doctor opined also that Plaintiff was "unable to meet competitive standards" in completing a normal workday or week without interruptions from psychologically-based symptoms; performing at a constant pace without an unreasonable number of

---

[2] The Court acknowledges that the date of the mental impairment questionnaire completed by Dr. Luu is the source of a dispute between Plaintiff and Defendant. Plaintiff asserted the form was completed in 2005, and Defendant argued it was completed in 2004. The form appears to be dated 2005, but was marked with two separate "received" stamps dated March 3 and 4, 2004. Additionally, Dr. Luu wrote in a treatment note that Plaintiff "handed me mental questionnaire form for disability obtained from attorney" on February 25, 2004. AR at 707. Therefore, it appears to the Court that this document was completed in 2004, and will refer to it as such.

6

1  rest periods, and; understanding, remembering, and carrying out detailed instructions.  Dr. Luu
2  indicated that Plaintiff could understand, remember, and carry out simple instructions; make simple
3  decisions, and; ask questions or request assistance.  Id.  Dr. Luu noted in conclusion that, it was
4  "very likely she will be a frequent absentee."  Id. at 669.  The checklist form provided no support for
5  these conclusions.

6        In February 2006, Dr. Archimedes Garcia, state agency psychiatrist, reviewed the record and
7  determined Plaintiff was moderately limited in her abilities to understand, remember, and carry out
8  detailed instructions.  AR at 847.  In all other work-related categories, he found Plaintiff was "not
9  significantly limited," including in her ability to understand and remember short and simple
10 instructions, carry out simple instructions, and maintain attention and concentration for extended
11 periods.  Id. at 847-48.  On another checklist form, Dr. Garcia indicated Plaintiff had a depressive
12 disorder, post-traumatic stress disorder, and mild limitations in daily activities, concentration, and
13 social functioning.  Id. at 831-41.

14        On November 28, 2006, Dr. Luu evaluated Plaintiff and found that her condition was
15 "improved," with a GAF score of 60.  AR at 747.  Dr. Luu noted Plaintiff's cognition, orientation,
16 and thought content were normal, though she was depressed.  Id.  Again, Dr. Luu diagnosed Plaintiff
17 as suffering a depressive disorder and post-traumatic stress disorder.  Id.

18        Dr. Luu evaluated Plaintiff again on March 8, 2007.  She noted that Plaintiff's "mental issue
19 is not severe" and the response to medication change was "improved."  AR at 736.  Additionally, Dr.
20 Luu opined that Plaintiff's cognition, orientation, insight and judgement were "normal;" her thought
21 process was "organized."  Id.  Though Plaintiff's mood was depressed, she was cooperative and
22 alert.  Id.  As before, the doctor diagnosed Plaintiff with a depressive disorder and post-traumatic
23 stress disorder (stable).  Id.  At Axis V, Dr. Luu reported that Plaintiff a GAF score of 80.  Id.  Dr.
24 Luu noted Plaintiff no longer needed continued psychiatric care from Fresno County and could be
25 transferred back to her primary care doctor.  Id.

26        Dr. Shireen Damania and Dr. Rustom Damania (a consultative internist) administered a
27 consultative psychiatric examination of Plaintiff on August 27, 2007.  AR at 861-72.  Dr. Rustom
28 Damania noted the patient seemed "unsure," and diagnosed Plaintiff with bronchial asthma, low

back pain, chronic daily headaches secondary to stress, and abdominal pain due to peptic ulcer disease. Id. at 865. To these diagnoses, Dr. Shireen Damania added a depressive disorder not otherwise specified. Id. at 868. Concluding, Dr. Rustom Damania opined, "The patient should be able to lift and carry 20 pounds occasionally and 10 pounds frequently…to stand and walk for six hours out of a normal eight hour workday with normal breaks…[and] to sit six hours." Id. at 865. After observing Plaintiff had no difficulties in concentrating but could only recall one out of three objects immediately, Dr. Shireen Damania added, "She is able to understand, carryout, and remember simple one-and two-step job instructions...[and] to respond appropriately to usual work situations and deal with changes in a routine work setting if the instructions are presented simply and undimensionally." Id. at 868-69.

ALJ Findings

As a preliminary matter, the ALJ determined the presumption of continuing non-disability did not apply because the Plaintiff rebutted the presumption by providing evidence warranting a change in her residual functional capacity. AR at 23. The ALJ stated the decision of January 20, 2000, which ruled Plaintiff was not disabled, "is res judicata as to the period through that date." Id.

Following these determinations, the ALJ evaluated Plaintiff with the customary five-step evaluation process. The ALJ established first that Plaintiff had not engaged in substantial gainful activity since her application date of June 13, 2002. AR at 25. Second, the ALJ found Plaintiff had several severe impairments: myalgia, chronic back pain, asthma, and a depressive disorder not otherwise specified. Id. at 26. Next, the ALJ found no impairment, or combination of impairments, met or medically equaled one of the listed impairments. Further, the ALJ noted:

> The claimant failed to provide objective medical evidence establishing she has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

Id. At the fourth step, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently; and to sit, stand, and/or walk for six hours in an eight-hour workday. Id. at 27. Plaintiff could perform simple repetitive tasks "with

8

moderate limitation in responding appropriately to usual work situations and to changes in a routine work setting." Id. Also, Plaintiff needed to avoid concentrated exposure to dust, fumes, odors, and gases. Id. As Plaintiff had no past relevant work, it was not necessary for ALJ to determine whether or not she could return to this work. See id. at 29.

Based his findings, the medical evidence, and testimony of a vocational expert, the ALJ determined Plaintiff retained the RFC to perform work that existed in significant numbers in the national economy and specifically cited the vocations of bagger, garment sorter, and agricultural produce sorter. AR at 29. Subsequently, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act since her application date. Id. at 30.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner of Social Security to deny benefits under the Act. When reviewing findings of fact, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. See Sanchez v. Sec'y of Health & Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 289, 401 (1971), quoting Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

## REVIEW

In order to qualify for benefits under Title XVI of the Social Security Act, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if,

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

The burden of proof is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. Maounis v. Heckler, 738 F.2d 1032, 1034 (9th Cir. 1984).

To achieve uniform decisions, the Commissioner established regulations that include the five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520(a)-(f), 416,920(a)-(f) (1994). As noted, applying that process, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since June 13, 2002; (2) had medically determinable severe impairments (myalgia, chronic back pain, asthma, and a depressive order not otherwise specified); (3) did not have an impairment or combination of impairments that met or equaled one of the listed impairments set forth in 20 C.F.R.§ 404, Subpart P, Appendix 1; (4) did not have past relevant work to which she could return; but (5) had the ability to perform other work at the state and national level in significant numbers. AR at 23-30. The ALJ then determined Plaintiff was not "disabled" as defined in the Act above since her application date. Id. at 30.

## DISCUSSION

Plaintiff asserts the ALJ "committed reversible error in analyzing the opinions of the treating psychiatrist." Pl.'s Br. 3. In conjunction with this allegation, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's medical impairments. Id. at 8.

A. The opinion of the treating psychiatrist should be afforded the greatest weight.

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians, (2) examining physicians, who examine but do not treat the claimant, and (3) non-examining physicians, who neither examine nor treat the claimant.[3] Lester v. Chater, 81 F.3d. 821,

---

[3] For the purposes of this opinion, the terms "physician" and "doctor" include psychologists and other mental health professionals. The rule regarding treating physicians encompasses treating psychologists as well as medical doctors. McAllister v. Sullivan, 888 F.2d 599, 602 n.3 (9th Cir. 1989); see also 20 C.F.R § 404.1513(a)(3).

10

830 (9th Cir. 1996). The opinion of a treating physician is generally afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. Id.; see also 20 C.F.R. § 404.1527(d)(2); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Generally, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2).

Because Plaintiff was under the care of because Dr. Luu and Dr. Mouanoutoua, of FCMHS, were treating physicians, their opinions are afforded the most weight. Dr. Shireen Damania and Dr. Rustom Damania (a consultative internist), who examined Plaintiff but did not treat her, are "examining physicians;" their opinions are second to those of the treating physicians, but should be given more weight than the opinions of doctors who reviewed only the record (Dr. Aquino-Caro, Dr. Ikawa, and Dr. Garcia).

B.  The ALJ properly rejected the treating psychiatrist's opinion from 2004.

Evaluating the checklist form completed by Dr. Luu in 2004, the ALJ noted the form was "from several years ago." AR at 28. This opinion was "given little weight as it lacks signs, and only give[s] limited symptoms (*e.g.*, unable to do mental calculation, forgetful)." Id. The ALJ wrote:

> Further, Exhibit 9F/1-6 is also inconsistent with several assessments made by the DDS doctors that only moderately limit the claimant in complex tasking (Exhibits 1F pp. 7-8 and 18F, pp. 17-18; hypo #2), as well as being inconsistent with the most recent consultative psychiatric examination by a Board-certified psychiatrist (Exhibit 20F, pp. 5-6 and 4; the basis for Hypothetical #3. Additionally, I note the check blocks form at Exhibit 9F does not appear to have been drafted by a Board-certified doctor (while the recent CE is board certified).

Id. Thus, the reasons given by the ALJ for rejecting the 2004 opinion in Exhibit 9 were that it was "conclusionary and brief" in its checklist form, failed to give clinical findings supporting the opinion, and was inconsistent with the record, including opinions of consultative and examining doctors. Id. Supporting his rejection, the ALJ cited Crane v. Shalala (76 F.3d 251, 253 (9th Cir. 1996)) and Matney v. Sullivan (981 F.2d 1016, 1019-20 (9th Cir. 1992)) where the Court rejected forms that lacked bases and a treating physician's opinion that was unsupported by clinical findings.

1. Rejecting the treating physician's opinion for its conclusory and brief nature was a specific and legitimate reason for rejecting the 2004 opinion.

1   A treating physician's opinion that is "conclusory and brief" and lacks support of clinical
2   findings may be rejected by an ALJ. Magallanes, 881 F.2d at 751. Consequently, the Ninth Circuit
3   has established that an ALJ may discredit a treating physician's opinion that is in the form of a
4   checklist where the opinion is brief lacks supportive objective evidence. See Crane, 76 F.3d at 253
5   ("The ALJ permissibly rejected…check-off reports that did not contain any explanation of the bases
6   of their conclusion"); Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir.
7   2004) ("treating physicians' views carried only minimal evidentiary weight" where in the form of a
8   checklist and lacking supportive objective evidence).

9   Plaintiff argued the form was not brief and conclusory; "the ALJ mischaracterized the form
10  that Dr. Luu had utilized" and failed to recognize the GAF scores indicated the presence of serious
11  symptoms at the time, and "moderately severe symptoms" for the year's highest GAF score of 51.[4]
12  Pl.'s Br. at 10. In addition, Plaintiff asserted Dr. Luu did not fail to name symptoms of Plaintiff's
13  disability: "Dr. Luu not only mentioned the inability to make calculations and poor memory, but also
14  commented that Mai Lee's judgment and insight is fair, that she did not have suicidal or homicidal
15  ideation, and that she also appeared unstable." Id.

16  Defendant argued "the doctor's sparse description of mental findings was insufficient to
17  support her extreme opinion" since "Dr. Luu opined that Plaintiff essentially had no useful ability to
18  perform mental activities." Dft.'s Opp'n at 4. Defendant asserted Dr. Luu did not adequately
19  explain the limitations as the diagnosis of an impairment does not speak to its severity or how
20  symptoms impact functioning. Id. at 5.

21  Dr. Luu's "Mental Impairment Questionnaire" was a form on which the doctor filled in
22  blanks on the first page and on the following five pages completed checklists. On the first page, Dr.
23  Luu noted that Plaintiff had been treated by the facility since 1999. AR at 665. Dr. Luu also

---

[4] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed.) ("DSM-IV). A GAF score between 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job." Id. at 34. A GAF score of 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflict with peers or co-workers)." Id.

provided a DSM-IV Multiaxial Evaluation: Plaintiff had a depressive disorder and deferred dysthymia; she had not been driving for two years and did not speak English; and her current GAF score was 49 while the highest GAF score of the past year was 51. Id. Dr. Luu did not complete the portion of the checklist where she was prompted to "identify [her] patient's signs and symptoms."[5] Id. at 666. Though Dr. Luu completed the checklist sections on "mental abilities and aptitudes needed" to do unskilled, semi-skilled, and skilled work (with her indications discussed above), she never explained any of her conclusions in the section wherein she was prompted to explain limitations. Id. at 667-68. Thus, Dr. Luu completed the checklist form, but failed to offer any subjective observations or explanations in support of her conclusions.

In Crane, the ALJ properly rejected three psychological evaluations because they were checklist reports and did not contain any explanations of the conclusions set forth. Crane, 76 F.3d at 253. Plaintiff argued that the case is distinguishable from Crane because "Dr. Luu's opinions are supported by voluminous treatment records that document extensive mental health treatment over the course of nine years." Pl.'s Br. at 11. On the other hand, Defendant argued that the voluminous records referenced by Plaintiff did not support the assessment as most were dated well after Dr. Luu drafted the opinion in 2004 and primarily reflect Plaintiff's subjective complaints. Dft.'s Opp'n at 5-6. The Court finds that the case at hand is not distinguishable from Crane—in neither instance did the checklist reports contain explanations within the report regarding the bases of their conclusions.

The ALJ properly discredited a treating physician's view in Batson because it was in the form of a checklist, was contradicted by other assessments of the claimant's medical condition, lacked supportive objective evidence, and was based on the claimant's subjective descriptions. Batson, 359 F.3d at 1195. Similarly here, the ALJ found that the form completed by Dr. Luu gave only limited symptoms and lacked evidence in support of the findings. Dr. Luu's opinion was

---

[5] Symptoms are a claimant's own description of her mental impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a). Signs are "anatomical, physiological, or psychological abnormalities which can be observed" apart from symptoms; professional skill and judgment are required to evaluate the presence and severity of signs. Id. at §§ 404.1528(b), 416.928(b). Further, psychiatric signs, as would be applicable here, "are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception." Id.

contradicted by assessments of other physicians evaluating Plaintiff's mental condition as DDS doctors Ikawa and Garcia, and Dr. Shireen Damania, consultative examiner only moderately limit[ed] the claimant in complex tasking," but Dr. Luu opined that Plaintiff was "seriously precluded" from numerous mental abilities and was unable to meet competitive standards in understanding, remembering, and carrying out detailed instructions. Id. at 28; 665-68.

### 2. The treatment notes do not support the treating physician's 2004 opinion

Plaintiff argued that because "the determination as to whether the ALJ's finding is supported by substantial evidence must be based on the review of the record as a whole," all treatment records must be considered from Dr. Luu and the Fresno County Human Services System, including group therapy leaders such as Dr. Mouanoutoua. Pl.'s Br. at 11 (citing Magallanes, 881 F.2d at 751). Even if the Court were to assume all treatment notes must be considered by the Court in evaluating the ALJ's decision to reject Dr. Luu's opinion as Plaintiff asserted, the treatment notes do not support Dr. Luu's opinions set forth in the checklist form.

Plaintiff asserts that the "voluminous treatment records" found in the Administrative Record support Dr. Luu's 2004 checkbox opinions but cites specifically to pages 513-88, 608-61, 703-10, 733-96, 806-30, and 913-30.[6] Pl.'s Br. at 11. A majority of the treatment notes cited by Plaintiff document only her own comments and concerns voiced during group therapy sessions. See, e.g., AR at 513, 522, 630, 642, 757-62, and 779. Notably, the ALJ found Plaintiff's subjective complaints lacked credibility, and Plaintiff does not challenge this finding or the ALJ's reasons given to explain the finding. Thus, these group therapy notes do not support Dr. Luu's opinions set forth in the 2004 checklist form. It is settled that where a treating physician's opinion is based largely upon Plaintiff's own subjective description of her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating doctor's opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (a physician's opinion of disability

---

[6] By citing so broadly to these treatment records, evidently Plaintiff believes that over 30 pages of treatment notes indicating Plaintiff either failed to attend group therapy or cancelled an appointment somehow support Dr. Luu's checklist opinion. See AR at 27; see also, e.g., AR at 515, 538-39, 549-50, 571-72, 581-82, 613-15, 617, and 623-24. To the contrary, these records are more probative of the fact that Plaintiff was not fully compliant with her treatment provided at FCMHS and more supportive of the ALJ's conclusion that Plaintiff is not disabled as defined under the Social Security Act.

"premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be discarded where the subjective complaints have been properly discounted).

Furthermore, within the records that Plaintiff argued the Court should consider as support for Dr. Luu's 2004 checkbox opinion, were treatment notes that *directly contradict* the opinion. These records demonstrate that Plaintiff's condition was significantly improved from the time Dr. Luu completed the checklist in 2004. See, e.g., AR at 735-36, 747. For example, on November 28, 2006, Dr. Luu noted Plaintiff's response to a medication change was "improved." AR at 747. Though she appeared disheveled, Dr. Luu opined that Plaintiff's cognition, orientation, and thought processes were normal. Id. Most notably, Dr. Luu determined that Plaintiff's GAF score had improved to 60. Id. In addition, when Dr. Luu evaluated Plaintiff in 2007, Plaintiff had again improved— she was cooperative and her cognition, orientation, and thought processes were normal. d. at 736. As a result, Dr. Luu determined that Plaintiff's GAF score was 80.[7] Id. Perhaps most revealing is that, in Dr. Luu's opinion, Plaintiff's "**mental issue [was] not severe**," and she no longer required services from FCMHS. Id., emphasis added.

Considering the totality of the treatment records from Dr. Luu's office, as urged by Plaintiff, his 2004 checkbox opinion is not supported. In fact, Dr. Luu made clear in subsequent treatment notes that *even he did not concur with the 2004 opinion*. Therefore, the ALJ did not err in rejecting the checkbox opinion.

3. The ALJ set forth substantial evidence to support his decision to reject Dr. Luu's 2004 opinions

When contradicted by another physician, the treating physician's opinion may be rejected only with "specific and legitimate reasons for doing so that are based on substantial evidence in the record." Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). This burden can be met by the ALJ "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751. Where an

---

[7] With a GAF score between 71-80, "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning..." DSM-IV at 32.

15

1  examining physician "provides independent clinical findings that differ from the findings of the
2  treating physician, such findings are substantial evidence." Orn v. Astrue, 495 F.3d 625, 632 (9th
3  Cir. 2007), quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (internal quotations
4  omitted). By itself, the contrary opinion of a non-examining physician does not constitute a
5  specific, legitimate reason for rejecting a treating or examining physician's opinion, but when
6  consistent with other evidence in the record, it can constitute substantial evidence. Tonapetyan v.
7  Halter, 242 F.3d 1144, 1449 (9th Cir. 2001). Therefore, where the ALJ rejects the opinion of a
8  treating physician, at least in part, based on the opinion of a consulting physician, there must be
9  additional evidence in the record to support the decision. Lester, 81 F.3d at 831.Here, the ALJ cited
10 evidence for his rejection, including the opinions of Dr. Ikawa from October 2002, Dr. Garcia from
11 2006, and Dr. Damania from 2007. AR at 28; see also AR at 460, 847, and 869. Specifically, the
12 ALJ stated that Dr. Luu's opinion was "inconsistent with several assessments made by the DDS
13 doctors that only moderately limit the claimant in complex tasking." Id. at 28.

14       Likewise, the ALJ rejected Dr. Luu's opinion, because it was "inconsistent with the most
15 recent consultative psychiatric examination," by Dr. Shireen Damania who, the ALJ noted, was a
16 board-certified psychiatrist. AR at 28. Because Dr. Shireen Damania was an examining opinion,
17 her opinion may constitute substantial evidence to support the ALJ's conclusion if she offered
18 independent clinical findings, which resulted in (1) diagnoses differing from those offered by the
19 treating physician and are supported by substantial evidence or (2) findings based on objective
20 medical tests that the treating physician has not considered. See Orn, 495 F.3d at 632; Magallanes,
21 881 F.3d at 751. Notably, both Dr. Damania and Dr. Luu diagnosed Plaintiff with a depressive
22 disorder, not otherwise specified. See AR 665, 868. On the other hand, Dr. Damania conducted a
23 "Mental Status Evaluation," that was based, in part, upon objective medical testing. AR 868. For
24 example, Dr. Damania tested Plaintiff's memory by requiring her to remember three objects. Id.
25 Likewise, for example, she tested Plaintiff's intellectual functioning and reported such details as the
26 fact that Plaintiff could perform addition, but only at a very basic level. Id. Based upon these
27 objective findings and her observations, Dr. Damania determined that Plaintiff had the abilities set
28

forth in her reports. AR at 869-872. Therefore, the opinion of Dr. Damania is substantial evidence to support the ALJ's decision to reject Dr. Luu's opinion.

## CONCLUSION

For all these reasons, the Court concludes that the ALJ cited substantial evidence in the record to support his conclusion that Plaintiff could perform work and was not disabled. In addition, his decision to reject Dr. Luu's 2004 checkbox opinion was supported by substantial evidence.

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff MAI YANG LEE.

IT IS SO ORDERED.

Dated:  **September 20, 2010**                              **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE